IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SMALL SPONSORS WORKING GROUP, <br><br> Plaintiff, <br><br>v. <br><br>MIKE POMPEO, Secretary of State of the United States; MARIE ROYCE, Assistant Secretary of State, Bureau of Educational and Cultural Affairs; EVIN SABA, Acting Deputy Assistant Secretary of State for Private Sector Exchange, Bureau of Educational and Cultural Affairs; and The UNITED STATES DEPARTMENT OF STATE, <br><br> Defendants. | Case No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COMES NOW Plaintiff Small Sponsors Working Group, by and through its undersigned counsel, and sues Defendants, MIKE POMPEO, Secretary of State of the United States; MARIE ROYCE, Assistant Secretary of State, Bureau of Educational and Cultural Affairs; KEVIN SABA, Acting Deputy Assistant Secretary of State for Private Sector Exchange, Bureau of Educational and Cultural Affairs; and The UNITED STATES DEPARTMENT OF STATE, and alleges as follows:

### I. INTRODUCTION

1. This lawsuit is brought by Small Sponsors Working Group ("SSWG"), a group of small business entities as defined by the Small Business Administration which act as sponsors in connection with the United States Department of State's ("Department") Exchange Visitor

Program, to challenge sanctions imposed by the Department upon certain of its members on or about August 13, 2019 and for a declaration that the Department must follow proper procedure in promulgating and enforcing rules which govern its Exchange Visitor Program.

2.  The members of Plaintiff SSWG are sponsors of exchange programs operated through the Department Exchange Visitor Program ("EVP"). Each year, SSWG members sponsor thousands of foreign nationals in various program categories to participate in exchange programs in the United States.

3.  The sanctions at issue in this case arise from the Department's arbitrary and capricious finding that certain of SSWG's members violated EVP regulations. As detailed further below, the flawed findings that underlie the Department's action in this case cause the sanctions levied by the Department to be arbitrary, capricious, and a violation of SSWG's members' right to due process.

4.  The cornerstone of the Department's decision is a finding that SSWG's members violated program regulations set forth at 22 CFR Part 62, et seq., but the Department has failed to specify the nature of the putative violations.

5.  The Department based its findings upon a flawed data collection conducted by the Kentucky Consular Center from June 2018 through January 2019, in which the Kentucky Consular Center contacted several hundred U.S. corporate entities that served as host organizations for intern and training program participants.

6.  SSWG believes that this data collection undertaken by the Kentucky Consular Center was unlawful, as it does not appear that the Office of Management and Budget approved such data collection as required by the Paperwork Reduction Act.

7. SSWG members have also confirmed that the information obtained by the Kentucky Consular Center was often collected from individuals having no knowledge of or involvement with the Exchange Visitor Program and who were not authorized to speak on behalf of their host organizations regarding the Exchange Visitor Program. SSWG members have also confirmed that the individuals conducting the data collection on behalf of the Kentucky Consular Center were inconsistent in the questions they asked the individuals at the host organizations, many of whom just happened to answer the phone.

8. SSWG believes that the individuals conducting this data collection on behalf of the Kentucky Consular Center were not adequately qualified, trained, or supervised while performing that work, and that the data collection process was so flawed as to render all information collected worthless for programmatic review purposes, for the consideration or imposition of any sanction, or in connection with any demand for remedial action against program participants.

9. The Department has acted in an arbitrary and capricious manner in sanctioning SSWG members based upon this data collection, as the Department is aware of the flaws with this data collection based upon site visits that Department officials have conducted with employers identified as being allegedly problematic in the Kentucky Consular Center work product; yet when Department officials inspected the hosting facility they could find no issues, problems, or regulatory violations.

10. Regardless, in response to the Kentucky Consular Center's data collection, the Department issued approximately 32 "Letters of Concern," which direct sponsors to conduct site visits to specified hosting entities and provide those hosting entities with training regarding the terms and conditions of the Exchange Visitor Program and to verify that these host entities meet the requirements of the Exchange Visitor Program. Such sanction is arbitrary and capricious, not

based in fact, and, in many circumstances, demands an impossibility of performance as many of the entities that the Department has directed sponsors to train will have no future involvement with the EVP.

11. The "Letters of Concern" issued as a result of the flawed Kentucky Consular Center's data collection advise SSWG's member small business sponsors that they have 90 days to complete these site visits and explicitly threaten further administrative sanctions should these sponsors fail to comply.

12. To comply with this directive, SSWG anticipates that more than 325 site visits and "training sessions" will be required at an average cost of some $3,000 per visit, with the cost being borne solely by SSWG's members.

13. Thus, without an adequate basis to form a belief as to whether a regulatory violation has actually occurred, and in violation of the Administrative Procedure Act, the Department, acting by and through its Office of Private Sector Exchange, is imposing what is tantamount to a financial penalty in excess of one million dollars on small sponsors that conduct the Department's cultural exchange programs.

14. The imposition of such penalties against SSWG's members significantly damages these smaller sponsors' ability to carry out their regulatory duties for their current participants on a day-to-day basis.

## II.  STATEMENT OF FACTS

Exchange Visitor Program Background

15. Congress established the Exchange Visitor Program ("EVP") in 1961 with the goal of promoting educational and cultural exchanges between the people of the United States and other nations. *See* Mutual Educational and Cultural Exchange Act of 1961, Pub. L. 87-256, § 101, 75

Stat. 527 (codified at 22 U.S.C. § 2451). The EVP authorizes a range of educational and cultural exchange programs for foreign visitors, including "work-based" occupational training programs designed to provide "on-the-job exposure" to American techniques, methodologies, and expertise. *See* 22 C.F.R. § 62.2; *see also* 22 U.S.C. § 2452(a)(1)(B)(ii) (authorizing exchange programs for "trainees").

16. Though oversight of the EVP rests with the Department's Bureau of Educational and Cultural Affairs, Office of Private Sector Exchange, the programs themselves are "facilitated – indeed, largely conducted – by Agency-designated program sponsors." Exchange Visitor Program, Final Rule, 58 Fed. Reg. 15180 (Mar. 19, 1993). To become a sponsor, an organization must apply for and obtain designation from the State Department. *See* 22 C.F.R. §§ 62.5, 62.6.

17. Under EVP regulations, the State Department's Office of Private Sector Exchange may impose sanctions against a program sponsor if it finds that the sponsor engaged in one or more specified "reason[s] for sanctions." *Id.* § 62.50(a).

18. Upon a finding that the sponsor engaged in sanctionable conduct as defined by the regulations, the agency may impose "lesser" sanctions, including a "letter of reprimand." *Id.* § 62.50(b). The Department, however, maintains a practice and policy of "seldom propos[ing] formal sanctions without first engaging in informal discussions seeking to bring the sponsor into voluntary compliance." Exchange Visitor Program – Sanctions and Termination, 72 Fed. Reg. 62112, 62114 (Nov. 2, 2007). Rather than resort to formal sanctions, the Department will often provide a sponsor information and guidance concerning sponsorship best practices to help the sponsor improve its program. A "Letter of Concern," however, is not included in the Department's sanctioning regulations and the Department has intentionally, arbitrarily, and capriciously, issued "Letters of Concern" to SSWG's members in this case in order to not be bound by its own

regulations, to not meet their own regulatory obligations, and to thwart SSWG's members' ability to defend themselves and their reputations – all in violation of SSWG's members' right to due process.

19. Sponsors subject to "lesser" sanctions are permitted to submit a one-time paper response "in opposition to or mitigation of the sanction" which "may include additional documentary material." 22 C.F.R. § 62.50(b)(2). The agency may then "modify, withdraw, or confirm such sanction." *Id*. If the sanctions are confirmed, "[t]he decision of the Office is the final Department decision[.]" *Id*. § 62.50(b)(3). No such opportunity for review is provided for with regard to the "Letters of Concern" issued to and imposing sanctions upon Plaintiff SSWG's members in this case.

20. Lesser sanctions may form a predicate component of future sanctions against a program sponsor. One "[r]eason[] for sanctions" under the EVP regulations is where a sponsor has "[e]videnced a pattern of failure to comply with one or more provisions of this Part." 22 C.F.R. § 62.50(a)(2). Likewise, a program sponsor may be placed on probation where the Department finds that it has engaged in "a pattern of violation of regulations such that further violations could lead to suspension or revocation of the sponsor's Exchange Visitor Program designation, or other sanctions as set forth herein." *Id*. § 62.50(b)(1)(ii). A formal reprimand, moreover, comes with a proviso that "repeated or persistent violations of the regulations in this part may result in suspension or revocation of the sponsor's Exchange Visitor Program designation, or other sanctions as set forth herein." *Id*. § 62.50(b)(1)(i).

21. The "Letters of Concern" referenced herein were not issued pursuant to any validly adopted regulation or policy.

22. In addition, the "Letters of Concern," which are a sanction in-and-of themselves, impose these sanctions based upon "incidents" that do not exist, or do not rise to sanctionable levels.

23. In addition, the Office of Private Sector Exchange has violated the Administrative Procedure Act by enacting an unannounced moratorium on the designation of new intern and training sponsors, and upon the program expansion of existing sponsors, including SSWG's members.

24. This unannounced moratorium constitutes a fraud on SSWG's members that have paid substantial fees to the Office of Private Sector Exchange expecting the service for which they have paid but which the Office of Private Sector Exchange had no intention of providing to SSWG's members when the Office took such payments.

The Department's Online "Sanctioned Sponsors" List

25. The gravity of the Department's sanctions against SSWG's members is substantially magnified by the Department's past practice and policy of maintaining a list of sanctioned sponsors which was published on the Department's J-1 visa website. The online list included the sponsor's name, affected program category, date of imposition, nature of the sanctions, and list of the regulatory provision(s) the Department has found the sponsor to have violated. After years of being prominently displayed, this list is not currently found on the Department's webpage. Nevertheless, the Department has made no announcement as to why the sanctioned sponsor list has been temporarily taken down and when it will again be posted.

26. SSWG's members, like all program sponsors, depend for their success on maintaining a network of program participants, volunteers, and host organizations. The Department encourages these parties to consult the J-1 visa website where it has previously and

likely will again post its list of sanctioned sponsors. Given the nature of the agency's actions in this case, publication of the "Letters of Concern" and the sanctions set out therein on a publicly posted list would destroy the considerable business goodwill SSWG's members have accumulated, and irretrievably stigmatize their reputation in the EVP community.

27. Public posting of the Department's sanctions decision in this case and its issuing "Letters of Concern" would have potentially disastrous reputational and financial consequences for SSWG's members.

### III. PARTIES

28. Plaintiff SSWG is a coalition of for-profit and not-for-profit public benefit organizations and designated whose members are designated by the United States Department of State as Exchange Visitor Program sponsors. SSWG has its headquarters and principal place of business in Dyersburg, Dyer County, Tennessee.

29. Defendant MIKE POMPEO is the Secretary of the Department of State. He is sued in his official capacity. As the Secretary of the Department of State, he oversees the actions and has ultimate responsibility for the actions of the Department of State officers in imposing sanctions on SSWG.

30. Defendant MARIE ROYCE is the Assistant Secretary of the Bureau of Educational Affairs in the Department of State. She is sued in her official capacity. In her capacity as Assistant Secretary, she has the ultimate responsibility for oversight of the Exchange Visitor Program.

31. Defendant KEVIN SABA is the Acting Deputy Assistant Secretary of the Office of Private Sector Exchange. He is sued in his official capacity. In his capacity as Acting Deputy Assistant Secretary, he has the responsibility for the day-to-day administration of the Exchange Visitor Program.

32. Defendant UNITED STATES DEPARTMENT OF STATE is the agency responsible for administering the Exchange Visitor Program. The Department of State maintains the ultimate responsibility within the federal government for imposing sanctions on SSWG's members as a Program Sponsors.

## IV. JURISDICTION

33. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as it arises under the constitution and laws of the United States, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. In addition, this Court has jurisdiction under 28 U.S.C. § 2201(a) (Declaratory Judgment Act). This action is also brought under 28 U.S.C. § 1346 (United States as a defendant).

34. Further, the Exchange Visitor Program is not subject to the foreign affairs function exception of the Administrative Procedure Act under the circumstances of this case. See *ASSE Intern., Inc. v. Kerry*, 803 F.3d 1059, 1070 (9th Cir. 2015).

35. SSWG has exhausted its administrative remedies. Pursuant to 22 C.F.R. § 62.50(b)(3), the August 2019, decision to issue the "Letters of Concern" imposing sanctions against SSWG's members is the final State Department decision. There is no administrative appeal.

## III. VENUE

36. Venue properly lies in the Western District of Tennessee pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 703, since SSWG has its headquarters and principal place of business in Dyersburg, Dyer County, Tennessee and at least one of its members, The Foundation for Worldwide International Student Exchange, has its headquarters and principal place of business in Dyersburg, Dyer County, Tennessee.

## V. CAUSES OF ACTION

**Count I:**

Arbitrary and Capricious Action in Violation of the APA

37. SSWG hereby incorporates by reference the allegations contained in paragraphs 1-36 of this Complaint as if the same were set forth verbatim herein.

38. Defendants' practices, policies, rules, criteria, interpretations of law, and conduct referenced herein violate the regulations at 22 C.F.R. § 62 *et seq.* and the Administrative Procedure Act ("APA") and should be set aside pursuant to 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and pursuant to 5 U.S.C. § 706(2)(D), as without observance of procedure required by law.

39. The Department's decision to sanction SSWG's members ignored the Department's own regulatory framework and relied upon data that was flawed and unlawfully collected by an agency that was not legally authorized, nor properly equipped, trained, or supervised in the collection of such data.

40. The unlawful nature and known deficiencies of this data collection directly undermine the putative findings upon which the Department based its sanctioning of SSWG's members.

41. Nevertheless, the Department insists upon sanctioning SSWG's members as set forth in the unlawfully issued "Letters of Concern," which sanctions will significantly impair SSWG's members' ability to continue their participation in the Program.

42. The Department's blind reliance upon the data collection compiled by the Kentucky Consular Center in issuing is "Letters of Concern" and sanctions against SSWG's members is arbitrary and capricious. The Department knew that such data collection was flawed at the time

10

that it issued its "Letters of Concern." The EVP regulations charge the *Department of State* with determining when a sponsor has engaged in conduct that warrants sanctions, and it is not reasonable for the agency to fail to conduct its own investigation while outsourcing the basis of its decision-making to a separate, unauthorized administrative division of the agency, which, in turn, relied upon untrained and improperly supervised contractors in ostensibly gathering information.

**Count II:**

Due Process Violation

43. SSWG hereby incorporates by reference the allegations contained in paragraphs 1-42 of this Complaint as if the same were set forth verbatim herein.

44. SSWG's members have several protectable interests giving rise to a right to due process. SSWG's members have a liberty and property interest in their business goodwill and reputation. These interests will be irrevocably damaged if the Department sanctions SSWG's members as set out in its "Letters of Concern."

45. In addition, the regulatory provisions which SSWG's members are charged with violating circumscribe the Department of State's authority in a manner that constrains the Department's discretion, giving rise to a protectable property interest.

46. These interests are magnified by the fact that the undocumented sanctions form part of SSWG's members' permanent file, and can be used as a predicate for adverse action by the Department against SSWG's members in the future, including the imposition of additional penalties implicating SSWG's members' capacity to operate as a program sponsor. As stated by the Department, these "Letters of Concern" will also be considered in future requests for sponsors' program expansion and also in connection with possible sponsor program reductions, all of which

can adversely affect SSWG's members' future revenue, in which they have a vested property interest.

47. In addition, the "Letters of Concern" themselves are not provided for by any validly adopted rule or regulation of the Department and were not promulgated and adopted after public comment in violation of the Administrative Procedure Act.

## VI. ATTORNEY'S FEES

48. As a result of Defendants' unlawful actions, Plaintiff was required to retain the undersigned counsel and pay counsel reasonable fees and expenses. Because Defendants are not substantially justified in pursuing their actions, Plaintiff is entitled to recover legal fees and all costs and expenses under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412.

## VII. RELIEF REQUESTED

WHEREFORE, SSWG respectfully requests this Court to enter judgment in its favor and issue the following Order:

a. Declare Defendants actions to be a direct violation of the Administrative Procedure Act; arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law and a direct violation of Plaintiff's and its members' Due Process rights arising under the Fifth Amendment;

b. Review the challenged "Letters of Concern" dated on or about August 13, 2019, and declare that they are arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with the law;

c. Temporarily and Permanently enjoin the Defendants, their agents, successors and all other persons acting in concert with them from enforcing or applying against the Plaintiff or its members the terms of the "Letters of Concern" issued on or about August 13, 2019;

d. Award SSWG its attorney's fees and costs; and

e. Grant such other relief as the Court may deem just, equitable, and proper.

Respectfully submitted,

RAINEY, KIZER, REVIERE & BELL, P.L.C.

By: s/ Michael L. Mansfield
    NATHAN E. SHELBY, BPR #026583
    MICHAEL L. MANSFIELD, BPR #18781
    Attorneys for Plaintiff
    209 East Main Street
    P. O. Box 1147
    Jackson, TN  38302-1147
    731/423-2414
    nshelby@raineykizer.com
    mmansfield@raineykizer.com