IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| SMALL SPONSORS WORKING GROUP,<br><br>    Plaintiff,<br><br>v.<br><br>MIKE POMPEO, Secretary of State of the United States; MARIE ROYCE, Assistant Secretary of State, Bureau of Educational and Cultural Affairs; KEVIN SABA, Acting Deputy Assistant Secretary of State for Private Sector Exchange, Bureau of Educational and Cultural Affairs; and The UNITED STATES DEPARTMENT OF STATE,<br><br>    Defendants. | Case No. 1:19-2600-STA-jay |

ORDER DENYING PLAINTIFF'S MOTION
FOR ENTRY OF A PRELIMINARY INJUNCTION

Plaintiff Small Sponsors Working Group has moved the Court for the entry of a preliminary injunction requiring Defendants to retract and/or restrain Defendants and those acting in concert with them from enforcing the terms of certain "Letters of Concern" that Defendants and their agents issued to Plaintiff's members and other similarly situated small-business sponsors on or about August 12-13, 2019. (ECF No. 7.) The "Letters of Concern" required Plaintiff's members and the other entities that received such letters to, among other things, conduct site visits to specified host employers and to conduct training sessions during such on-site visits within ninety days of the receipt of the letters and to file a report with the Office of Private Sector Exchange Administration within four months of the receipt of the letters. A hearing on the motion was held on November 15, 2019. After reviewing Plaintiff's motion; the affidavit of Dave Dahl and the

memorandum filed in support of the motion; Defendants' response to Plaintiff's motion; hearing testimony and argument in open court; and based upon the entire record, the Court finds that the motion should be **DENIED** because Plaintiff has not met the requirements for injunctive relief.[1]

Background

Plaintiff is a group of companies defined as small businesses by the United States Small Business Administration that are sponsors of exchange student programs operated through the Exchange Visitor Program ("EVP") of the United States Department of State ("Department").[2] There are other small businesses who are also sponsors but are not members of Plaintiff's group.

The EVP allows foreigners to come temporarily to the United States to participate in educational and cultural exchanges. The EVP is intended to "assist in the development of friendly, sympathetic, and peaceful relations between the United States and . . . other countries." 22 U.S.C. § 2451. The Department implements the EVP and designates third-party sponsors (such as Plaintiff's members) to administer programs within the EVP. In most cases, it is the sponsors' responsibility to help visitors find study, teaching, or training opportunities in the United States, oversee the visitors' stays, and monitor their welfare.

The EVP is administered by the Department's Office of Private Sector Exchange. Two offices within the Private Sector Exchange are the Office of Exchange Program Administration ("OPA") and the Office of Exchange Coordination and Compliance ("Compliance Office"). OPA is responsible for day-to-day monitoring of the EVP, including sponsor compliance with

---

[1] Defendant's motion to dismiss (ECF No. 19) is pending. The Court granted Plaintiff's unopposed motion for leave to file an amended complaint twenty-one days after the ruling on the motion for preliminary injunction and twenty-eight days after the ruling to file a response to the motion to dismiss. (ECF No. 21.)

[2] The facts are stated for the purpose of deciding this motion only.

Department regulations. OPA also processes complaints from program participants and third parties and advises sponsors on actions that could assist them in achieving regulatory compliance.

In carrying out its role, OPA attempts to resolve issues through communications with sponsors, including following up on sponsors' actions to resolve matters and recommending best practices. In some cases, OPA may issue a "Letter of Concern." These letters are most commonly sent if routine counselling does not resolve a case, the matter demands prompt additional action, or a sponsor's historical record recommends memorializing OPA's continuing concerns with the sponsor's program administration. The letters provide sponsors with notice of deficiencies and the opportunity to cure those deficiencies before punitive action is considered.

If intermediate steps like counselling and Letters of Concern do not achieve the desired goal, sanctions may be necessary. Sanctions can range from revocation of a sponsor's designation, 22 C.F.R. § 62.50(d), to lesser sanctions, which the Department may impose "in its discretion and depending on the nature and seriousness of the violation." *Id.* § 62.50(b)(1). Lesser sanctions include a letter of reprimand, probation, a requirement that a sponsor submit a Corrective Action Plan, or a "reduction in the authorized number of exchange visitors in the sponsor's program." *Id.* § 62.50(b)(1)(i)-(iv). Before the Department imposes a lesser sanction, it notifies the sponsor in writing of its intent to do so and gives the sponsor an opportunity to respond, including submitting documentary material. *Id.* § 62.50(b)(2). "Upon review and consideration of such submission," the Department "may, in its discretion, modify, withdraw, or confirm such sanction." *Id.* The Department has similar discretion to modify, withdraw, or confirm more severe forms of sanctions after giving the sponsor notice and opportunity to respond. *Id.* § 62.50(c)(2), (d)(2).[3]

---

[3] In the rulemaking that produced the EVP sanctions regulation, commenters asked that "sponsors be given the opportunity to cure alleged violations before the Department imposes sanctions." 72 Fed. Reg. 72,245, 72,247 (Dec. 20, 2007). In response to those comments, the

The Compliance Office, a separate unit within the Private Sector Exchange, conducts compliance reviews and determines whether to impose sanctions. *See* 10 *Foreign Affairs Manual* § 252.4 (stating that the Compliance Office "[m]aintains sole authority to recommend appropriate sanctions of designated sponsors" to the Deputy Assistant Secretary for the Private Sector Exchange). OPA plays little role in the sanctions process, beyond making referrals to the Compliance Office. Even when a referral is made, the Compliance Office conducts its own review and makes a decision independent from that of OPA when it decides whether to initiate a compliance review and, if so, whether ultimately to impose sanctions.

On or about August 12-13, 2019, the Department, acting through its office of Private Sector Exchange, sent "Letters of Concern" to thirty-two EVP sponsors, some of whom were Plaintiff's members, in which the Department pointed out possible violations of EVP rules resulting from, among other things:

- Significant deviation in the host organization's practices from the program as described in its Training/Internship Placement Plan;
- Portrayal of the program as a staffing tool;
- Description of its program as composed of unskilled labor;
- Description of its program as lacking supervision or a training component;
- Placement of an exchange visitor with a host organization posing a risk to the visitor's safety and welfare.

---

Department confirmed that it "seldom proposes formal sanctions without first engaging in informal discussions seeking to bring the sponsor into voluntary compliance." *Id.*

(Letter of Concern to D. Dahl, PageID 61, ECF No. 7-1.) The letters resulted from inquiries conducted by the Department's Kentucky Consular Center and by OPA about possible problems with each sponsor's administration of the EVP at various host organizations.

OPA sent the Letters of Concern to "share OPA's concerns and its instructions for program improvement." (*Id.*) Although the letters required remedial measures, including site visits, the letters also stated that failure to carry out those measures would result only in OPA "recommend[ing] that Compliance take further action" or in the Compliance Office's "initiat[ing] an independent review." (*Id.* at PageID 62.)

OPA issued additional communications after the Letters of Concern. First, there was a "clarification" email to the recipients of the Letters of Concern assuring the recipients that, although the office believed that the site visits described in the letters were the best means to ensure compliance with EVP requirements, failure to conduct those site visits would not necessarily result in OPA's recommending that the Compliance Office take further action. (Email, PageID 73, ECF No. 7-1.)  Instead, OPA's decision about making such a referral would result from a "holistic" analysis of the circumstances. (*Id.*) OPA also clarified that sponsors need not conduct site visits for "host organizations at which a sponsor has no active exchange visitors and at which the sponsor foresees no future placements" or for organizations visited as recently as Feb. 13, 2019. (*Id.*)

OPA followed the e-mail with a letter. (Letter, PageID 127, ECF No. 12-2.) The letter confirmed that the purpose of Letters of Concern, like the August 2019 letters, was "to begin a conversation with a sponsor so that the Department and the sponsor can identify actions that could be taken to address concerns and reduce the potential for more serious consequences, such as sanctions, later on." (*Id.*) OPA also stated its "willing[ness] to work with" sponsors that were "experiencing difficulty implementing OPA's recommendations." (*Id.*)

On September 9, 2019, Plaintiff filed this lawsuit to challenge the August 2019 Letters of Concern, alleging that the letters violate the Administrative Procedure Act ("APA") because they purportedly constitute sanctions issued contrary to EVP regulations. (Compl. ¶¶ 37–42, ECF No. 1.) Plaintiff has also alleged violations of procedural due process arising from the letters, asserting the deprivation of property and liberty interests. (*Id.* at ¶¶ 43–47.)  Plaintiff purports to represent a group of EVP sponsors that received the Letters of Concern.

After filing the complaint, Plaintiff notified Defendants that it would move for a preliminary injunction. In response, there was an email exchange between the Department's attorney and the attorney for Plaintiff reiterating that the Department "has agreed that it will not pursue sanctions against any Plaintiff recipient of a letter of concern on the basis of the investigation or site visits described in the letters during the litigation." (Email Exchange, PageID 70, ECF No. 7-1.) The Department issued these communications to all sponsors that received Letters of Concern, explaining that the letters contained recommendations and asking that entities contact the Department so they could collaborate on solutions.

Despite this explanation, Plaintiff filed a motion for a preliminary injunction on September 26, 2019 (Mot., ECF No. 7), claiming that the Letters of Concern were de facto sanctions and asking the Court to prohibit the Department from "enforcing the requirements and sanctions set out in its 'Letters of Concern' sent to Plaintiff's members in August 2019."[4]  Defendants have responded that Plaintiff's claims are without merit and that Plaintiff lacks standing to bring this action. (Resp., ECF No. 12.) According to Defendants, if Plaintiff is seeking to enjoin any sanction

---

[4] Plaintiff has included its exhibits with its memorandum rather than filing them as separate attachments, thus making it difficult for the Court to navigate the record.  For any future filings, Plaintiff is strongly encouraged to file its exhibits as attachments to its memorandum and to label each attachment with specific, identifying information, *e.g.*, Exhibit A, Declaration of John Smith. *See* Rule 7.1, *ECF Policies and Procedures*.

that the Department might pursue, Plaintiff has already received all the relief it could possibly seek because the Department has agreed it will not pursue sanctions against Plaintiff's members during this litigation for any issue identified in its Letters of Concern.

<u>Analysis</u>

A preliminary injunction is an extraordinary measure and is never awarded as of right. *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). In considering a request for a preliminary injunction, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987). "Generally, the plaintiff bears the burden of establishing his entitlement to a preliminary injunction." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (noting that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion") (quoting 11A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2948, pp. 129-30 (2d ed. 1995)); *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) ("A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."); *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (explaining that "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion").

A district court must consider four factors when deciding whether to grant a preliminary injunction: (1) the movant's chances of succeeding on the merits; (2) the harm to the movant absent the injunction; (3) the harm to third parties if the injunction is granted; and (4) whether the

injunction would serve the public interest. *Winter*, 555 U.S. at 20. Of these factors, likelihood of success on the merits "is the most important." *Jones*, 569 at 277; *see also Southern Glazer's Distrib. v. Great Lakes Brewing*, 860 F.3d, 844, 849 6th Cir. 2017) (stating that a "preliminary injunction issued [when] there is simply no likelihood of success on the merits must be reversed").

The Court finds that the first two factors are dispositive in this case. Based upon the Court's review of the pleadings and documents filed in this case, the Court is not convinced that Plaintiff has shown a substantial likelihood of success on the merits. Additionally, Plaintiff has not made any showing that it will be irreparably harmed or damaged if relief is not granted.

<u>Likelihood of Success on the Merits</u>

Article III of the Constitution's case-or-controversy limitation on federal judicial authority requires a plaintiff to show that it has standing to bring it claims. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). The failure to show standing demonstrates that the plaintiff is unlikely to succeed on the merits. *Munaf v. Geren*, 553 U.S. 674, 690 (2008). To satisfy Article III's standing requirements, a plaintiff must show that (1) it has suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992).

In the present case, Plaintiff asserts that it has associational standing, *i.e.*, standing to sue on behalf of its members. An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right (that is, at least one member has suffered an injury fairly traceable to the action of the defendant and such injury will be redressed by a favorable decision), the interests at stake are germane to the organization's purpose,

8

and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) (determining that the plaintiff organization's purported members "possess[ed] all of the indicia of membership in an organization" including (a) electing the entity's leadership, (b) serving in the entity's leadership or influencing its direction, and (c) financing the entity's activities, including the costs of the lawsuit.)  Plaintiff can only represent the interests of its purported members if it shows it is a bona fide membership organization or that it possesses "indicia of membership." *See id.* at 344.

As noted by Defendants, Plaintiff has failed to establish the requirements for associational standing.  Plaintiff has not shown that the "interests it seeks to protect are germane to the organization's purpose," *id.* at 343, because it has not alleged or submitted any evidence showing what its purpose is or explained how this lawsuit is germane to that purpose.  Plaintiff has also not shown that it is a membership organization or an organization otherwise eligible to invoke associational standing.[5]

Although Plaintiff asserts that it is a "group of companies" injured by the Department's actions (Mem. in Supp. of Mot. for Prelim. Inj. at 1, ECF No. 7-1), beyond that, Plaintiff has failed to point to any information to show that it is a traditional membership organization or that its members have the requisite "indicia of membership" to pursue associational standing.  An organization must do more than merely have members to establish the existence of a membership organization.

---

[5] Plaintiff clearly has no standing to bring this lawsuit on behalf of its non-members.

At the hearing, David Dahl, Plaintiff's coordinator and spokesperson, testified that several small sponsors banded together to create a group that would advocate for their interests. (Hearing TR, PageID 141.) There are no membership dues. (*Id.* at PageID 142.) As issues arise, the members talk on a conference call and decide whether they will advocate for or against that issue. (*Id.* at PageID 142-43.) The only requirement for membership is that "you be a designated sponsor and that you not be a member of the Alliance, which is the larger group."[6] (*Id.* at PageID 143.) Not every small sponsor is interested in every issue. (*Id.* at PageID 143-44.) If an attorney or other outside help is needed, the members share in the cost. (*Id.* at PageID 144.) There are no board of directors or elected officials; instead four of the members, including Dahl, rotate taking the lead on issues. (*Id.* at PageID 144-45.) If these four decide that an issue should be pursued, they email the other members to see who wants to participate. (*Id.* at PageID 145.) It is a "loose knit association," membership is voluntary, and it is not incorporated. (*Id.* at PageID 146-47.) In response to the question, "[N]ot all sponsors have the same interest as far as the level of exchange program members they're operating with," Dahl answered "Yes." (*Id.* at PageID 147.) The group does not have a written mission statement. (*Id.* at PageID 149.) Dahl described the purpose of the group as "to advocate for smaller sponsors." (*Id.*) Dahl did not provide a list of the members. (*Id.* at PageID 150.) Plaintiff has no website, and there are no formal filing requirements that Plaintiff must comply with. (*Id.* at PageID 153.)

The four main members made the decision to bring this lawsuit and are financing it, in consultation with other members. (*Id.* at PageID 151.) The requirements for membership are for each member to pay its "fair share" and to comply with the regulations of the Department of State;

---

[6] The Alliance consists of larger sponsors who each pay $11,000 annually to the Alliance for advocacy. (*Id.* at PageID 141.)

if a member does not comply, the four main members will ask that member to leave the group. (*Id.* at PageID 152-53.)

Defendants rely, in part, on *Heap v. Carter*, 112 F. Supp. 3d 402 (E.D. Va. 2015), in which the court determined that the plaintiff lacked associational standing when it merely alleged that "it maintains an active membership, including members who are enlisted in the United States Navy." *Id.* at 418. The organization had "not alleged any information that would allow the Court to find that it has the kind of leadership and financial structure that is closely tied to that of its members or that its members exert any control over the direction of the organization." *Id.* at 419. *See also Hunt*, 432 U.S. at 344–45 (explaining that details such as whether an entity's constituents elect its leadership and whether they pay dues are essential to showing "indicia of membership.") *C.f. Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 598–99 (D.C. Cir. 2015) (holding that an organization was a traditional membership organization when it showed it had "a defined mission that serves a discrete, stable membership with a definable set of common interests" by submitting a copy of its bylaws and declarations describing the organization's "mission" and "how [it] operates").

At this juncture, Plaintiff has not presented facts showing that it has standing to bring this suit on behalf of its members. *See Harrison v. Spencer*, 2020 WL 1493557 at *7 (E.D. Va. Mar. 27, 2020) (noting that "institutional standing has frequently been recognized as a fact-intensive inquiry" (citing Wright & Miller, *13A Fed. Prac. & Proc. Juris.* § 3531.9.5 (3d ed.))). In particular, Plaintiff does not have a board of directors or a written mission statement, and not all members have the same level of interest. Instead, as testified to by Dahl, Plaintiff is a "loose knit association."

Plaintiff also cannot show a likelihood of success on the merits because Plaintiff does not challenge any final agency action. Judicial review is available under the APA only with respect to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Accordingly, a plaintiff fails to state a claim unless it can show that its "injury stems from a final agency action." *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 495 (6th Cir. 2014).

An agency action is only final when it "mark[s] the consummation of the agency's decisionmaking process." *Parsons v. U.S. Dep't of Justice*, 878 F.3d 162, 167 (6th Cir. 2017) (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016)). "[M]erely tentative or interlocutory" actions are not sufficient. *Id.* The tentativeness of an agency action may be shown both by its own terms and by later clarifying agency statements. *See Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 638–39, 646 (6th Cir. 2004) ("Both letters suffer from this defect. By their terms, they state tentative conclusions based on limited information presented to the agency"… [and] "the agency has now disclaimed that the letters are the definitive view of the agency, no matter what the website says."). In this case, the Court finds that the Letters of Concern are not the consummation of the Department's decisionmaking process as shown by subsequent statements by the Department, the regulatory context, and the letters themselves.

The letters are clear that failure to adhere to the stated recommendations would only result in an investigation by the Compliance Office, a separate operational unit of Private Sector Exchange. The outcome of any such investigation would not be controlled by the Letters of Concern. (Saba Decl. ¶ 16, ECF No. 12-1.) At the hearing, Dahl acknowledged that the Compliance Office (and not OPA) determines whether a sanction will be issued. (TR Hearing at PageID 160-71.) The OPA initially gets the complaint and tries to remedy any deficiencies before involving the Compliance Office which would undertake a full investigation. (*Id.* at PageId 161.)

OPA has clarified that it will not necessarily refer matters to the Compliance Office for failure to adhere to the letters' recommendations and that OPA wants to work with sponsors that have difficulty carrying out those recommendations. The Court agrees with Defendants that the proof shows that the agency action challenged in this proceeding is not "final" under the APA.

Additionally, no legal consequences flow from the Letters of Concern. Final agency action requires that the "action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Parsons*, 878 F.3d at 167 (quoting *Hawkes Co.*, 136 S. Ct. at 1813). Agency action is not final when it "does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *Jama*, 760 F.3d at 496 (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)).

Here, the Letters of Concern are not final agency action because no legal consequences flow from them. Instead, the letters only warn that further investigations may be required if non-compliance continues. The fact that OPA may make a referral to the Compliance Office based on the matters described in the letters or that the Compliance Office could be influenced by OPA's views does not show finality. Agency action is not final when its adverse effect is "contingen[t]" on "future administrative action," *Jama*, 760 F.3d at 496, even when an agency could rely on a document like the Letters of Concern in taking later action. *Parsons*, 878 F.3d at 168 (such consequences would be the "product of independent agency decisionmaking").

Plaintiff has also not shown a likelihood of success on the merits for its denial of due process claim. Plaintiff must show that its claims are "ripe for judicial review." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002). "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992). To determine ripeness, the Court must look at: "(1) the likelihood that

13

the harm alleged will ever come to pass; (2) whether the factual record is sufficiently developed to allow for adjudication; and, (3) hardship to the parties if judicial review is denied." *Norton*, 298 F.3d at 554.

The likelihood that the harm alleged will actually occur is the most important factor. *See United Steelworkers of Am., Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194 (6th Cir. 1988). A "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). The purpose of this requirement is to avoid "inappropriately interfer[ing] with further administrative action" and to ensure the courts may "benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998).

Here, Plaintiff's sponsors have the opportunity to work with the Department to the extent they have difficulty implementing OPA's recommendations, a process that may obviate the need for at least some of the site visits to which Plaintiff objects. Moreover, OPA may decide not to refer the issues described in the Letters of Concern to the Compliance Office regardless of whether Plaintiff's sponsors take further action. Finally, any deprivation to Plaintiff's interests would occur through sanctions, which would follow an independent inquiry by the Compliance Office and a process that includes notice and an opportunity to be heard for the sponsor. *See generally* 22 C.F.R. § 62.50. None of these events has occurred, and, therefore, Plaintiff's claims are not ripe.

Irreparable Harm

A party seeking a preliminary injunction must show that it "will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) (citation omitted). The Supreme Court has held that lower courts err when

they hold that, when a plaintiff establishes a strong likelihood of success on the merits, a preliminary injunction may issue on a "possibility" of irreparable harm.

> Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction. Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.

*Winter*, 555 U.S. at 21-22 (citations omitted).

It "weighs heavily against a claim of irreparable harm" when it is possible other relief "will be available at a later date, in the ordinary course of litigation." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). In this case, Plaintiff has not met its burden to show actual and imminent irreparable harm in the absence of preliminary relief because the letters themselves are not sanctions and the Department has stated that it will not pursue sanctions against Plaintiff's sponsors during this litigation based on the issues identified in the Letters of Concern although the Department has not relieved the sponsors of their obligation to comply with EVP regulations. The Department has made clear that the letters are not sanctions, that the Department will work with sponsors to address the identified concerns, and that no sanctions will be pursued against Plaintiff as to these issues during the litigation. Thus, Plaintiff has failed to show irreparable harm if a preliminary injunction is not granted.

<u>Balance of Equities and the Public Interest</u>

Under the foregoing analysis, the Court determines that the first two factors are dispositive. However, the Court notes that the final factors also militate against the issuance of a preliminary injunction. These factors require Plaintiff to show that the balance of equities tips in its favor and that an injunction is in the public interest. *Winter*, 555 at 20. These factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the public

interest favors compliance with EVP regulations because the regulations protect the welfare of exchange visitors. Otherwise, the foreign policy of the United States could be undermined. The Department's use of Letters of Concern helps to ensure that deficiencies are remedied without the need for formal sanctions, thus conserving the resources of the parties.  There is no harm to Plaintiff in waiting for a final judgment given the Department's clarification of the August 2019 Letters of Concern and its agreement not to pursue sanctions based on those issues during this litigation.

Because Plaintiff has not met the standard for the issuance of a preliminary injunction, Plaintiff's motion is **DENIED**.  Plaintiff will have twenty-one (21) days from the entry of this order in which to file an amended complaint and twenty-eight (28) days from the entry of the order in which to respond to Defendants' motion to dismiss.

IT IS SO ORDERED.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:  May 20, 2020.